IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN ALLEN,

    *Plaintiff*,

v.

CORT TRADE SHOW
FURNISHINGS, *et al.*,

    *Defendants*.

Civil Action No. ELH-19-2859

**MEMORANDUM OPINION**

In this employment discrimination case, John Allen, the self-represented plaintiff, filed suit on September 30, 2019, against Cort Trade Show Furnishings ("CORT")[1] and One Stop Staffing Inc. ("One Stop"). ECF 1 (the "Complaint"). Allen supplemented his Complaint with additional factual allegations on October 16, 2019. ECF 4. Then, on November 4, 2019, Allen amended his Complaint to add Berkshire Hathaway Inc. ("Berkshire Hathaway") as a defendant. ECF 8 (the "Amended Complaint"). Allen alleges that, by failing to promote him and by terminating him, defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 et seq. ECF 1 at 4-5. He also alleges that he was subjected to retaliation. *Id.* at 5.

One Stop answered the Complaint. ECF 27. Among other things, One Stop disputes that it was plaintiff's employer. *Id.* ¶ 2. The other defendants have moved to dismiss.

---

[1] The docket reflects that Allen has sued "Cort Trade Show Furnishings." But, Allen also refers to the defendant as "Cort Trade Show Furniture" and "Cort Business Services." *See*, *e.g.*, ECF 1 at 1, 3; ECF 4 at 1; ECF 5 at 2; ECF 10 at 1. Defendant identifies itself as "CORT Business Services Corporation." *See* ECF 12; ECF 12-1.

In particular, CORT has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(4) and 12(b)(5), asserting insufficient service of process and failure to name the proper party. ECF 12. The motion is supported by a memorandum of law (ECF 12-1) (collectively, the "CORT Motion") and two exhibits. ECF 12-2 to ECF 12-3. Allen opposes the CORT Motion. ECF 15. CORT has replied. ECF 20. Berkshire Hathaway has moved to dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6). ECF 21. It asserts lack of personal jurisdiction, improper venue, and failure to state a claim. *Id.* The motion is supported by a memorandum of law (ECF 21-1) (collectively, the "Berkshire Hathaway Motion") and one exhibit. ECF 21-2. Allen opposes the Berkshire Hathaway Motion. ECF 30. He has also submitted two exhibits. ECF 30-1 to ECF 30-2. Berkshire Hathaway has replied. ECF 31.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny the CORT Motion and grant the Berkshire Hathaway Motion.

## I.    Factual Background[2]

Allen asserts that he was employed by CORT as a truck driver. ECF 1 at 6. He also asserts that he worked as an "on call Temp Truck Driver" for One Stop, beginning in December 2010. ECF 4 at 1. In late November 2011, Allen began taking work assignments for CORT. *Id.*

Plaintiff contends that for "5 years or so [he] was very happy with this job." *Id.* Allen claims that he "made multiple attempts to sign on as a permanent driver under, lease to CORT Trade Show Furniture Inc., as a permanent driver without success." *Id.* at 5. Allen alleges that he was terminated from CORT on June 15, 2019, "in retaliation for lodging a complaint about the

---

[2] In recounting the factual background, I rely on Allen's allegations in ECF 1 and ECF 4. At this juncture, I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

company's illegal policy of employing undocumented labor. . . ." ECF 1 at 6; *see* ECF 4 at 6. Allen also claims that several employees of CORT conspired against him.  ECF 1 at 6.

Allen asserts that he "thought the management staff [at CORT] was happy with [his] performance on the job."  ECF 4 at 1. According to Allen, he "was able to complete some challenging work assignments in spite of a lack of communication between management staff. . . ." *Id.*  Allen claims he once drove a loaded tractor to the Virginia Beach Convention Center and unloaded it by himself, "because the scheduled crew whom was supposed to unload the show failed to show up at their scheduled start time."  *Id.*  According to Allen, the delivery included approximately 350 pieces of furniture.  *Id.*  Allen states that the delivery took eighteen hours to complete.  *Id.*

Plaintiff claims that he "accepted late start times odd hours long hours some wait times in the warehouse or on the work assignments at clients [sic] place of business without complaint." *Id.* at 2.  He also alleges that he "made redelivery of items for a show that were incorrect or short." *Id.* According to Allen, such situations occurred regularly "and [he] always came through" for CORT.  *Id.*  Staff members at CORT, including the general manager, "knew that [he] could be counted upon to complete a delivery for the company no matter how long it took or what obstacles or impediments" he encountered.  *Id.*

Damon Ringgold, who is Black, was the warehouse manager for CORT.  *Id.* at 2, 5.  Allen alleges that Ringgold's "management style leaves a lot to be desired."  *Id.* at 2.  Allen characterizes Ringgold as having "a malevolent malignent [sic] personality."  *Id.* He alleges that Ringgold "harbors racial animus against other people" and pursues "a hidden agenda."  *Id.*  Further, he claims that Ringgold "used and abused" him "in order to satisfy some psychological need . . . to reinforce his position in the workplace as an authority figure." *Id.* at 3.

Allen met Jackie Serpico at the Baltimore Convention Center in the truck loading dock area when she was a field representative for CORT. ECF 4 at 3-4.  In 2015 or 2016, Serpico was promoted to assistant warehouse manager under Ringgold.  *Id.* at 4. On the day that Allen met Serpico, Allen was the driver for a delivery and had a helper named Francisco with him.  *Id.* at 3-4.  Allen alleges that he and Francisco were attempting to move a large office credenza onto a dolly so it could be moved into the convention center.  *Id.*  at 4.  While they were doing so, Allen claims he "made the mistake of blurting out to the GES guy[3] standing next to Jacker Serpico 'hey buddy could you give us a hand with this.'"  *Id.* Allen claims that Serpico "glared at [him], hissed, and then retorted. 'That's not their responsibility.'" *Id.*

After Allen's initial encounter with Serpico, he "found it very difficult to feel comfortable" around her, because she complained about him to management.  *Id.*  Following this incident, Allen "devised a different strategy to deal with [her]." *Id.*  After this incident, while Allen was at the Gaylord Convention in Washington, D.C., he ran into Tom Bayes, CORT's General Manager, and "profusely complimented. . . Serpico's performance" at the warehouse.  *Id.*  Allen "made sure that [his] remarks got back to her." *Id.* at 5.  Indeed, plaintiff states that he "bent over backwards to try to get along with [Serpico] for as long as [he] could," and "[t]his strategy worked for a time." *Id.*  However, Allen states that "gradually . . . her true personality emerged." *Id.*  He alleges that "[s]he would become enraged over some incident or situation" and would "scream" at him.  *Id.* Allen claims that over time he became a "servile Doormat" when interacting with Ringgold and Serpico.  *Id.*

---

[3] According to Allen, "[t]here was supposed to be Union Labor at these places to render assistance but not in this case. There was however a support staff member from GES standing there along with Jackie Serpico watching [them] as [they] struggled to controll [sic] this piece without it falling over and injuring one of [them]." ECF 4 at 4.

While Allen was working for CORT, One Stop hired another temporary driver, Anthony Watkins.  ECF 4 at 5.  Allen claims "[h]e had been there[4] for some six years as a temp and they just put [Watkins] in front of [him] just like that."  *Id.*  According to Allen, "[f]rom the very start," Serpico gave preferential treatment to Watkins, because he is Black.  *Id.*  Allen also claims that "the entire driver staff" at CORT is Black, and he is "a Native American but that's beside the point. Not 100% either."  *Id.*

Allen acknowledges that the management staff at CORT does not know that he is Native American.  *Id.* at 6.  But, he maintains that "it's kind of obvious that the Management staff at [CORT] gives preferen [sic] treatment in the workplace to Black Truck Driver's [sic] in Vioalation [sic] of Federal EEOC regulation's [sic].  Management staff being Jackie Serpico and Daman [sic] Ringgold. . . ." *Id.* at 5-6.

Allen claims that in 2017, another CORT driver, Demetrious, hit a tree while driving a CORT truck.  *Id.* at 6, 10.  The accident caused "substantial damage to the cargo box Thousands [sic] of dollars damage."  *Id.* at 6; *see also id.* at 10.  However, CORT did not take any action against Demetrious.  *Id.* at 11.  And, Demetrious was still working for CORT when Allen was terminated on June 15, 2019, "for an accident far less serious."  *Id.* at 6; *see also id.* at 11.

According to Allen, Anthony Watkins has tried to undermine plaintiff's position at CORT. *Id.* at 9.  He showed plaintiff a gun.  *Id.*  Moreover, CORT "uses undocumented hispanic labor to operate their trade show business."  *Id.*  Allen states: "How many have green cards and are here legally in the U.S. is anybody's guess."  *Id.*  He adds, *id.*: "One of these people began harassing me in the workplace."  *Id.*  Allen identified the person as Julio, but he does not know Julio's last name.  *Id.*  According to Allen, Julio insulted and teased him in the break area, while Allen waited

---

[4] It is unclear from the complaint if "there" refers to One Stop or CORT.

for work assignments. *Id.* Julio also challenged him to a fist fight. *Id.* And, "[a]fter a few weeks of this behavior," Allen "filed an online complaint with the Immigration Naturalization Service/ICE documenting [CORT's] Illegal [sic] activities." *Id.* According to Allen, he told Watkins about the complaint he made and "on or about" April 15, 2018, Watkins told Ringgold and Serpico about it. *Id.*; ECF 1 at 6.

Plaintiff states that the next day "INS/ICE" came into CORT to investigate his complaint, but no one was detained or arrested. ECF 4 at 10. Allen alleges that Ringgold "look[ed] right at him as the police from INS/ICE left the premises." *Id.* A few days later, in the spring of 2018, Ringgold told Allen: "'We need to get rid of you, you know to [sic] much about how we do things around here.'" *Id.* Allen alleges: "It seemed to me that Damon Ringgold, Jackie Serpico, Anthony Watkins were manipulating workplace situations and events in order to make me look bad and undermine my position there as a driver with longevity and seniority so that I would quit or be fired." *Id.*

Allen claims that, around this time, another CORT employee, Nick, was seriously injured in an incident involving a furniture lift that Julio was driving. *Id.* Allen alleges that "Julio was at fault for this incident." *Id.* Yet, according to Allen, CORT did not take any action against Julio, and he remained employed by CORT. *Id.*

According to Allen, on the day he was fired, "[he] was backing a trailer into a loading dock" and "miscalculated the angle and some paint was scrap [sic] off the side of the trailer." *Id.* at 6. Allen claims that Ringgold became enraged and fired him. *Id.* Yet, the incident was "minor in scope . . . ." *Id.* at 11.

Allen posits "that these acts constitute a very basic violation of [his] civil rights against discrimination." *Id.* Allen maintains, *id.* at 6-7:

. . . the owner of One Stop Staffing Dave Sincavage. . . further discriminated against the Plaintiff John Allen by giving preferential treatment to the driver Anthony Watkins at the behest of Jackie Serpico in collusion with Damon Ringgold to further deprive John W. Allen of basic civil rights in the work place against discrimination on the basis of age race and retaliation as specified in the complaint.

Allen alleges that "adverse job action was taken against [him] by Damon Ringgold in retaliation for the complaints that [he] had lodge [sic] against [CORT] with INS/ICE . . ." *Id.* at 11. As a result, Allen claims he was "fired by Damon Ringgold over a relatively minor accident/incident as a retaliatory action for [his] complaints about their unlawful hiring and discriminatory hiring policies in the workplace." *Id.*

On October 17, 2019, plaintiff attempted to serve CORT at an address in Hanover, Maryland. ECF 5 at 2. The summons for CORT was returned unexecuted on November 4, 2019. ECF 6. The summons was reissued as to CORT on November 5, 2019. ECF 10. On November 22, 2019, the summons was returned executed as to CORT, at an address in Lutherville-Timonium, Maryland. ECF 16.

Daniel Jaksich, the Vice President and Controller of Berkshire Hathaway, avers in a Declaration that CORT Business Services Corporation "is a wholly-owned subsidiary of Berkshire Hathaway, Inc." ECF 21-2, ¶¶ 2, 9. The two entities, according to Jaksich, are entirely separate: "Berkshire Hathaway  operates its business in a separate building, in a separate state, under s separate board of directors, and has separate employees, assets, bank accounts, and principal place of business." *Id.* ¶ 10. He contends that "Berkshire Hathaway does not exercise any day-to-day control over the operations of CORT Business Services Corporation."

Moreover, he avers that Berkshire Hathaway is a Delaware corporation (*id.* ¶ 3) and that it "does not have business offices in Maryland, is not registered to do business in Maryland, does not have a registered agent in Maryland, and is not subject to taxation in Maryland." *Id.* ¶ 4.

7

Further, Allen asserts that Berkshire Hathaway "does not own or lease any Maryland real estate or other Maryland property." *Id.* ¶ 5.  According to Jaksich, Berkshire Hathaway does not sell or manufacture products in Maryland, nor does it provide services in Maryland. *Id.* ¶ 6.  And, he avers that Berkshire Hathaway has no Maryland bank accounts or telephone listings in Maryland. *Id.* ¶ 7.

## II.   Legal Standards

### A.  Service of Process

CORT has moved to dismiss under Fed. R. Civ. P. 12(b)(4) and 12(b)(5).  Fed. R. Civ. P. 12(b) provides that, before submitting a responsive pleading, a defendant may move to dismiss a complaint for "(4) insufficient process" or "(5) insufficient service of process."  Generally, "[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," and a "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery[ ] of the summons and complaint."  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2004, Supp. 2016).  And, pro se litigants must adhere to the Federal Rules of Civil Procedure. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113, (1993); *Hansan v. Fairfax Cty. Sch. Bd.*, 405 F. App'x 793, 794 (4th Cir. 2010) (per curiam); *Danik v. Hous. Auth. of Balt. City*, 396 F. App'x 15, 16–17 (4th Cir. 2010) (per curiam).

A defendant may move to dismiss for insufficient service of process, pursuant to Rule 12(b)(5). *See Archie v. Booker*, DKC-14-0330, 2015 WL 9268572, at *2 (D. Md. Dec. 21, 2015). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citation omitted).

Service of process is "fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Failure to effect proper service of process deprives the court of personal jurisdiction over a defendant. *See, e.g., Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998); *FDIC v. Schaffer*, 731 F.2d 1134, 1135–36 (4th Cir. 1984).

Analysis under Rule 12(b) implicates Fed R. Civ. P. 4. "Once service has been contested," as here, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *accord*, *e.g.*, *Baylor*, 2015 WL 4396609, at *1. Thus, Allen bears the burden of showing that service has been properly effected. *See Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam).

Fed. R. Civ. P. 4(a) specifies the contents of a summons. Among other things, it "must . . . (F) be signed by the clerk; and (G) bear the court's seal." Fed. R. Civ. P. 4(c)(1) mandates that a "summons must be served with a copy of the complaint." *See Danik v. Hous. Auth. of Baltimore City*, 396 Fed. App'x 15, 16 (4th Cir. 2010) ("The federal rules require that a defendant be served with the complete pleading and a copy of the summons."). And, "[t]he plaintiff is responsible" for service within the time provided by Rule 4(m). *Id.*

Process may be served, *inter alia*, by "delivering a copy" of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). Pursuant to Rule 4(e)(1), service may also be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ." And, Maryland Rule 2-121(a) permits service by mailing the summons and complaint to the person to be served by certified mail, requesting Restricted Delivery, so as to

show who was served, the date, and the address of delivery.  *Baylor*, WDQ-14-3330, 2015 WL 4396609, at *2.

Of relevance here, "[u]nder Rule 4, a corporation must be served by (1) delivering the summons and complaint to 'an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process,' or (2) following the law of Maryland." *See Baylor v. Wegmann's Food Market, Inc.*, WDQ-14-3330, 2015 WL 4396609, at *2 (D. Md. July 16, 2015) (citing Fed. R. Civ. P. 4(e), (h)).  As Judge Quarles stated in *Baylor*, (citing Md. Rule 2-124(d)):

> Service [in Maryland] is made upon a corporation . . . by serving its resident agent, president, secretary, or treasurer. If the corporation . . . has no resident agent or if a good faith attempt to serve the resident agent, president, secretary, or treasurer has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process.

Under Rule 4(l)(1), a plaintiff must submit proof of service "by the server's affidavit."  But, "[f]ailure to prove service does not affect the validity of service," and "[t]he court may permit proof of service to be amended."  Fed. R. Civ. P. 4(l)(3).

Notably, "insufficient service of process does not always necessitate dismissal."  *Malibu Media, LLC v. Doe*, ELH-13-3438, 2015 WL 4775337, at *8 (D. Md. Aug. 13, 2015) (citing *Pugh v. E.E.O.C.*, DKC-13-2862, 2014 WL 2964415, at *3 (D. Md. June 30, 2014)).  Of relevance here, "when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally."  *Miller v. Baltimore City Bd. Of Sch. Comm'rs*, 833 F. Supp. 2d 513, 516 (D. Md. 2011) (internal citation omitted).  As the Fourth Circuit has said, "[w]here the first service of process if ineffective, a motion to dismiss should not be granted, but rather the Court should treat the motion in the alternative, as one to quash the service of process and the case should

be retained on the docket pending effective service." *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) (internal citation and quotation marks omitted).

### B. Rule 12(b)(2)

Berkshire Hathaway moves to dismiss for lack of personal jurisdiction, predicated on Fed. R. Civ. P. 12(b)(2).  ECF 15.  "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter."  *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Under Rule 12(b)(2), a defendant "'must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.'"  *UMG Recordings, Inc. v. Kurbanov*, ___ F.3d ___, 2020 WL 3476993, at *3 (4th Cir. June 26, 2020) (citation omitted).  And, the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Grayson*, 816 F.3d at 267.

When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."  *Combs*, 886 F.2d at 676.  In its discretion, a court may also permit discovery as to the jurisdictional issue.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).  However, neither discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2).  *See generally* 4A WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 (4d ed. 2019).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court."  *Grayson*, 816 F.3d at 268.  "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction."  *Hawkins v. i-TV*

*Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *see Grayson*, 816 F.3d at 268.  In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction."  *Hawkins*, 935 F.3d at 226; *accord Sneha Media & Entm't, LLC. v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  However, "[u]nlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Hawkins*, 935 F.3d at 226; *see UMG Recordings, Inc.*, 2020 WL 3476993, at \*3; *Grayson*, 816 F.3d at 268; *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Mylan Labs.*, 2 F.3d at 62.

Notably, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'"  *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).[5]

### III.   Discussion

#### A.  The CORT Motion

Plaintiff sued "Cort Trade Show Furnishings," but CORT contends that it is not a real entity.  ECF 12-1 at 3.  Rather, it is "an amalgamation of two of the trade names used by CORT Business Services Corporation, those names being CORT Furniture Rental and CORT Tradeshows and Events."  *Id.*  And, CORT contends that CORT Business Services Corporation is the proper

---

[5] Berkshire Hathaway also moved to dismiss under Rule 12(b)(6).  But, in light of the disposition of the Berkshire Hathaway Motion, I need not address the standard under Rule 12(b)(6).

defendant in this action.  *Id.*  CORT Tradeshows and Events is located at 7466 Candlewood Road, Hanover, MD 21076.  *Id.*; ECF 12-2, ¶ 6.  CORT Business Services Corporation is a Delaware corporation, with its principal place of business at 15000 Conference Center Drive, Suite 440, Chantilly, VA 20151.  ECF 12-1 at 3; ECF 12-2, ¶ 3.  And, defendant contends that CORT Business Services Corporation is registered with the Maryland State Department of Assessments and Taxation; its resident agent is The Corporation Trust, Incorporated, located at 2405 York Road, Suite 201, Lutherville, MD 21093.  ECF 12-1 at 3-4; ECF 12-2, ¶ 7.

The docket reflects that, after the CORT Motion was filed, summons was reissued as to CORT and was returned executed.  Summons was accepted by Rebecca Gott, who is "authorized to accept service for Cort Trade Show Furnishings, Inc. C/O The Corporation Trust, Incorporated, at the address of 2405 York Road, Suite 201, Lutherville-Timonium, MD 21093."  ECF 16. However, the summons reflected the name "Cort Trade Show Furnishings."

Allen contends, ECF 15 at 6:

The plaintiff John W. Allen has shown proof of service properly served on the defendant.  The plaintiff John W. Allen has also listed in the body of the complaint the proper business names of the defendant.  Since Cort Business Services goes by so many names different names were used by plaintiff in filing this case.  However in the body of the complaint the plaintiff has properly listed the defendant by the names listed in the…State of Maryland database.

However, CORT maintains that Allen has sued a non-existent defendant.  Therefore, CORT argues that plaintiff's later service of process on CORT's resident agent does not remedy the fact that his writ of summons named a non-existent entity.  ECF 20 at 3.

Allen served process on a non-existent defendant, but at the proper address for CORT's registered agent.  *See* ECF 16.[6] Because Allen is proceeding pro se, and because CORT received

_____

[6] CORT could have asked the Court to correct the name of the defendant, as frequently happens.

13

actual notice of Allen's suit, I shall construe Rule 4 liberally; I decline to dismiss the Complaint on this basis.

However, "the plain requirements for the means of effecting service may not be ignored." *O'Meara*, 464 F. Supp. 2d at 476; *see Miller*, 833 F. Supp. 2d at 516.  Accordingly, I shall quash service on CORT.  Plaintiff shall seek a new summons naming the proper defendant and effect service within 30 days of the date of the attached Order.  *See Gray v. Allied Waste Servs of Washington*, RWT-11-cv-1612, 2012 WL 2871422, at *3-4 (D. Md. Jul. 11, 2012).

## B.  The Berkshire Hathaway Motion[7]

As noted, Berkshire Hathaway moved to dismiss under Rule 12(b)(2), claiming lack of personal jurisdiction.

Fed. R. Civ. P. 4(k)(1) permits a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located.  *UMG Recordings, Inc.* 2020 WL 3476993, at *3; *Carefirst of Maryland v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).   Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Carefirst of Maryland*, 334 F.3d at 396; *accord O'Reilly v Tsottles*, GLR-18-3622, 2020 WL 1505681, at *4 (D. Md. Mar. 30, 2020).

---

[7] Because I shall dismiss the Amended Complaint as to Berkshire Hathaway on the basis of Fed. R. Civ. P. 12(b)(2), I need not reach its arguments on venue and failure to state a claim.

### 1. Maryland's Long-Arm Statute

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2017 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J.").  It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals.  *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F2d 649 (4th Cir. 1985); *accord Mylan Labs.*, 2 F.3d at 61.

Berkshire Hathaway contends: "Plaintiff does not indicate in his Amended Complaint under which section of the Maryland long-arm statute he asserts that there is jurisdiction over Berkshire Hathaway."  ECF 21-1 at 11.  Because Allen bears the burden of establishing a prima facie case for jurisdiction, Berkshire Hathaway "reserves its arguments until Plaintiff comes forward with his case that there is jurisdiction under one or more sections of the long-arm statute." *Id.*

In Allen's opposition, he states: "Berkshire Hathaway has an obligation to see to it that the people who work under their corporate structure are treated fairly and not subject to abuse and discrimination if it is in their power to correct and prevent such abuse and discrimination. . . ." ECF 30 at 2.

In reply, Berkshire Hathaway argues that Allen has failed to address its argument on personal jurisdiction, and has thus conceded it. ECF 31 at 5. According to Berkshire Hathaway, plaintiff has failed to lay out any facts "showing conduct on the part of Berkshire Hathaway (either inside or outside of Maryland) that could conceivably satisfy Plaintiff's burden of establishing a basis for exerting personal jurisdiction over Berkshire Hathaway." *Id.*

I agree with Berkshire Hathaway. Plaintiff's Complaint and Amended Complaint simply fail to allege any facts that could satisfy Maryland's long-arm statute, in that he simply alleges no facts about Berkshire Hathaway at all. In all of his filings, he alleges only that Berkshire Hathaway is CORT's parent company. This alone cannot sustain a prima facie case under the long-arm statute.

Maryland courts have "consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution[.]" *Beyond Sys, Inc. v. Realtime Gaming Holding Co*., 388 Md. 1, 15, 878 A.2d 567, 576 (2005); *see CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (the long-arm statute authorizes the exercise of personal jurisdiction "'to the full extend allowable under the Due Process Clause'" (citation omitted)); *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *Pinner v. Pinner*, 240 Md. App. 90, 104, 201 A.3d 26, 34 (2019). Consequently, although the long-arm and constitutional due process requirements are distinct, they can be evaluated in tandem. *See Beyond Sys*, 388 Md. at 15, 878 A.2d at 576 ("[O]ur statutory

16

inquiry merges with our constitutional examination."); *accord Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996) ("Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.").

## 2. Constitutional Due Process

Even if plaintiff had alleged facts that, if true, would be sufficient to satisfy the Maryland long-arm statute, he has failed to satisfy the constitutional test.

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see UMG Recordings, Inc.*, 2020 WL 3476993, at *3. Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants*, *Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Nonetheless, the "constitutional touchstone" of personal jurisdiction is that "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Supreme Court has also indicated that the minimum contacts analysis must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (explaining that the "'minimum contacts' analysis looks to the defendant's

contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *see Bristol–Myers Squibb Co. v. Superior Court of Cal.*, ___ U.S. ___, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.").

Due process jurisprudence "recognize[s] two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919). However, "'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (*Goodyear*, 564 U.S. at 924).

In contrast, specific jurisdiction exists where the "the suit arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler AG*, 571 U.S. at 127 (citation omitted) (alterations in original). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb.*, 137 S. Ct. at 1780 (alterations in original) (quoting *Goodyear*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that

establishes jurisdiction.'" *Bristol-Myers Squibb.*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919).

The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction in a three part test," *UMG Recordings, Inc.*, 2020 WL 3476993, at *4, as follows:   "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether  the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'"  *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan, Inc.*, 293 F.3d at 712); *accord Sneha Media & Entm't*, 911 F.3d at 198; *Perdue Foods, LLC v. BRF, S.A.*, 814 F.3d 185, 188 (4th Cir. 2016); *Carefirst*, 334 F.3d at 397.

Here, plaintiff does not assert any facts sufficient to show that this Court has general personal jurisdiction over Berkshire Hathaway. Therefore, I shall consider only whether defendants are subject to specific personal jurisdiction in Maryland.

Notably, specific jurisdiction is assessed on a claim-by-claim basis.  *See Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 678 (M.D.N.C. 2011) ("When specific jurisdiction is asserted, jurisdiction must be established for each claim alleged."); *Gatekeeper, Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 666-68 (E.D. Va. 2010) (interrogating the doctrinal basis for this rule); Wright & Miller, § 1069.7 ("[A] plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").[8]

---

[8] To my knowledge, this rule has not been adopted by the Fourth Circuit.  But, those circuits that have addressed the issue appear to be in accord.  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006); *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999).

The first prong "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted). A defendant purposefully avails himself of a forum "where the defendant deliberately has engaged in significant activities within the state." *Id.* at 475-76. In such a case, "[i]t is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id.* at 475.

Frequently, the minimum contacts inquiry looks to the defendants' "'continuing relationships and obligations with citizens of [the forum state].'" *Id.* at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). For example, the Supreme Court upheld the assertion of jurisdiction over defendants who had entered contractual relationships with residents in the forum, *Burger King*, 471 U.S. at 479-480, or who circulated magazines in the forum, thereby "deliberately exploit[ing]" a market in the forum state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).

The Fourth Circuit has identified a list of factors that courts should consider when determining whether a defendant has conducted business in the forum. *Sneha Media & Entm't*, 91 F.3d at 198-99 (citing *Consulting Eng'rs*, 561 F.3d at 278):

(1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and

20

Case 1:19-cv-02859-ELH   Document 34   Filed 07/02/20   Page 21 of 21

(8) the nature, quality, and extent of the parties' communications about the business being transacted.

But, the Court has cautioned that these factors are "nonexclusive" and "not susceptible of mechanical application." *Consulting Eng'rs*, 561 F.3d at 278; *see UMG Recordings, Inc.*, 2020 WL 3476993, at *5. "Relevant to this analysis are the *quality* and *nature* of the defendant's connections, not merely the number of contacts between the defendant and the forum state." *UMG Recordings, Inc.*, 2020 WL 3476993, at *5 (emphasis in *UMG Recordings, Inc.*).

The only fact concerning Berkshire Hathaway in Allen's submissions is that it is the parent company of CORT. This is insufficient to establish specific personal jurisdiction.

Jaksich avers that Berkshire Hathaway maintains no offices or agents in Maryland (ECF 21-1, ¶ 4); it owns no Maryland property (*id.* ¶ 5); it does not sell products or services in Maryland (*id.* ¶ 6); and it maintains no Maryland bank accounts or telephone listings. *Id.* ¶ 7. Plaintiff's submissions are devoid of any allegations that Berkshire Hathaway has engaged in any business activity in Maryland, that it made in-person contact with a Maryland resident concerning a business relationship, or had any contracts in Maryland.

In short, there are no facts upon which this Court could exercise specific personal jurisdiction over Berkshire Hathaway in connection with this dispute.

## IV.   Conclusion

For the aforementioned reasons, I shall deny the CORT Motion but direct plaintiff to effect proper service on CORT. And, I shall grant the Berkshire Hathaway Motion.

A separate Order follows.

Date: July 2, 2020                              /s/_____
                                                Ellen L. Hollander
                                                United States District Judge

21